UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BEOM SU LEE,

                                    Plaintiff,

                   -v-

KARAOKE CITY et al.,

                                    Defendants.

---

18 Civ. 3895 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Beom Su Lee ("Lee"), proceeding *pro se*, brings this action for copyright

infringement against defendants Karaoke City, Chorus Karaoke, 32 Karaoke, WOW Karaoke,

NYC Karaoke, Turn Table Bar & Karaoke, Maru Karaoke, MK Karaoke, 5 Bar Karaoke

Lounge, k-2 Ziller Karaoke, Gagopa Karaoke, Judy Club, and Karaoke Duet 35.  Dkt. 2

("Compl.").  On October 15, 2018, certain defendants[1] moved to dismiss the Complaint for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or sought, in the

alternative, a more definite statement under Rule 12(e).  Dkt. 32.  On April 22, 2019, the

Honorable Stewart D. Aaron, United States Magistrate Judge, issued a Report and

Recommendation, recommending that the Court deny defendants' motion.  Dkt. 49 ("Report").

On April 30, 2019, defendants filed objections to the Report.  Dkts. 51–52.

        For the following reasons, the Court adopts the Report in full.

---

[1] Defendant Karaoke Duet 35 is represented by separate counsel and did not move to dismiss.
Defendant NYC Karaoke initially failed to answer the Complaint or otherwise appear, and on
November 14, 2019, the Court entered default judgment against it.  Dkt. 99.  After the Report
was issued, the Court vacated the default judgment against NYC Karaoke, on the basis that
"NYC Karaoke" was not a legal entity, and permitted plaintiff to amend his pleadings with the
name of the legal entity that corresponds to NYC Karaoke.  *See* Dkt. 119.  Lee later so amended.
*See* Dkt. 129 ("Am. Compl.").  Defendants Judy Club and k-2 Ziller Karaoke have not been
served despite multiple attempts by the U.S. Marshals Service.  *See* Dkts. 12, 29, 44–45.

1

I.      **Background**[2]

Lee brings this copyright infringement action alleging that defendants made unauthorized use of his copyrighted musical works in karaoke clubs in New York.  The works at issue were written by Lee's late father, Jae Ho Lee, a popular Korean musician.  Compl. ¶ 6.  Before his death in 1960, Jae Ho Lee owned more than 2,000 copyrights in musical works registered with the Korean Music Copyright Association.  *Id.*; *id.*, Ex. 3.  Following Jae Ho Lee's death, ownership of the copyrights transferred to Lee's mother, who then transferred them to Lee's older brother, Beom Seung Lee.  *Id.* ¶ 8.  Through a series of assignments, ownership of the copyrights was ultimately transferred to Lee.  *Id.*

In October 1996, Lee and his mother published the "Collection of Lee, Jae Ho Lee's Compositions," (the "Collection") which included 125 of Jae Ho Lee's musical works.  *Id.*, Ex. 1 ("Certificate").  On October 12, 1999, Lee and his mother registered the Collection with the U.S. Copyright Office.  *Id.*  On August 1, 2001, Lee's older brother Beom Seung Lee executed an assignment purporting to convey to Lee the rights to Jae Ho Lee's musical works in all geographical areas except Korea and Japan.  *See id.*, Ex. 3.  The U.S. copyright became effective on August 5, 2001.  *See* Certificate.

---

[2] The facts are drawn primarily from the Complaint and the attached Exhibits.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Following the issuance of the Report, Lee filed an Amended Complaint to include the legal entity corresponding to NYC Karaoke.  *See* Am. Compl.  However, because the factual allegations in the two complaints are identical, the Court here cites to the original Complaint that Judge Aaron used in writing his Report.

Between April 6, 2018 and April 18, 2018, Lee allegedly visited defendants' karaoke clubs to investigate their use of TJM Media and KUMYOUNG karaoke machines.  *Id.* ¶ 10.  Lee allegedly discovered 42 of Jae Ho Lee's musical works in TJ Media Karaoke machines at defendants' venues.  *Id.* ¶ 11; *id.*, Exs. 4–5.  At certain defendants' karaoke clubs, Lee alleges, he publicly performed protected songs, *see* Dkt. 43 ¶¶ 4–14; he has attached to the Complaint videos of himself playing certain songs at some of defendants' clubs, *see* Compl., Ex. 4.  Lee further alleges that defendants did not license or otherwise obtain permission to use the works in the Collection.  *Id.* ¶ 17.

## II.     Procedural History

On May 1, 2018, Lee filed the Complaint.  Compl.  On October 15, 2018, the moving defendants filed a motion to dismiss.  Dkts. 32–34.  On October 19, 2018, Lee filed an opposition to the motion.  Dkt. 39.  On December 4, 2018, the moving defendant filed a reply. Dkts. 46–47.

On April 22, 2019, Judge Aaron issued the Report, recommending that the Court deny defendants' motions to dismiss and for a more definite statement.  Report at 16.  On April 30, 2019, defendants filed an objection to the Report, Dkt. 51, and an accompanying memorandum of law in support of their objection, Dkt. 52 ("Objections").  Lee did not file a response to defendants' objections.

## III.    Legal Standards

### A.      Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When specific objections are timely made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected

to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38

(2d Cir. 1997). "To accept those portions of the report to which no timely objection has been

made, a district court need only satisfy itself that there is no clear error on the face of the record."

*Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y.

Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4

(S.D.N.Y. July 8, 2009)); *see also, e.g.*, *Wilds v. UPS*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

To the extent that the objecting party makes only conclusory or general objections, or

simply reiterates the original arguments, the Court will review the Report and Recommendation

strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094,

at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH),

2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). Further, "[c]ourts generally do not consider

new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares

v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011)

(collecting cases).

### B. Rule 12(b)(6)—Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to

dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable

inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

That tenet, however, does not apply to legal conclusions.  *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).  However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted).  The Court may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

### C.    Copyright Infringement

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108–09 (2d Cir. 2001).  Among other rights, copyright owners retain the exclusive right to perform, or authorize others to perform, a musical work publicly.  17 U.S.C. § 106(4).  The Copyright Act further requires that, before an action for copyright infringement is commenced, the work must be preregistered or registered.  *See* 17 U.S.C. § 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010) ("[The Act] establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the [Copyright] Act's remedial provisions.").

To survive a motion to dismiss, courts in this district have held that "a complaint based on copyright infringement must allege: (1) which original works are the subject of the copyright

claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been

registered in accordance with the statute; and (4) by what acts during what time the defendant

infringed the copyright." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,

69 F. Supp. 3d 342, 353 (S.D.N.Y. 2014) (citation omitted).

## IV.   Discussion

Defendants raise numerous objections to the Report.  Defendants object, on six grounds,

to the Report's recommendation not to dismiss the Complaint's single claim of copyright

infringement. The Report, they contend: (1) did not appreciate that Lee failed to include

sufficient detail to sustain a claim of copyright infringement, *see* Objections at 4; (2) was

incorrect in finding that Lee has adequately alleged ownership of a valid copyright, *see id.* at 4;

(3) was incorrect in finding that Lee has adequately alleged infringing conduct by each

defendant, *see id.* at 13; (4) was incorrect in finding that the copyrighted works are not in the

public domain, *see id.* at 13; (5) was incorrect in concluding that Lee sufficiently alleged that

each defendant publicly performed the copyrighted works, *see id.* at 18; and (6) was incorrect in

finding that defendants' use of the works is not protected by the fair use doctrine, *see id.* at 20.

Defendants further object to the Report to the extent that it did not address defendants'

argument that the complaint did not properly plead willful infringement, as required under 17

U.S.C. § 504.  *See id.* at 21.  Finally, defendants object that the Report was incorrect in finding

that defendants' request for a more definite statement should be denied.  *See id.* at 22.

Defendants' arguments are largely identical to those defendants raised in their motion to

dismiss briefing.  Much of the Objections' text is identical to the text in defendants' motion to

dismiss and reply brief.  *Compare*, *e.g.*, Dkt. 33 at 14–15 *with* Objections at 8–9; Dkt. 46 at 4–7

*with* Objections at 15–17.  And defendants largely make general objections, not ones aimed at

specific findings of the Report.  In light of this, review for clear error of such sections of the

Objections would be appropriate. *See Dickerson*, 2013 WL 3199094, at *1. Nevertheless, for the avoidance of doubt, the Court will review the Report *de novo*. The Court addresses each of defendants' objections in turn.

### A.     The Complaint's Allegations Regarding Defendants' Conduct

Defendants argue that Lee's Complaint is deficient because it makes "collective allegations" against multiple defendants, rather than challenging specific conduct by each. Objections at 4. Defendants rely on *Hart v. Salois*, 605 F. App'x 694 (10th Cir. 2015), for the proposition that the Complaint must be dismissed as based on "collective allegations." Objections at 4. *Hart* is easily distinguished. The complaint there "included 60 counts, 1227 paragraphs, 231 pages, and a 7 ½ page table of contents," leaving the defendants to "parse out which claims relate[d]" to which defendants. *Hart*, 605 F. App'x at 697 (citation omitted). By contrast, Lee brings a single count of copyright infringement against each defendant. Compl. ¶¶ 16–18. And his complaint adequately pleads the conduct—infringement of the Collection— of each defendant.

Defendants next fault Lee's complaint on the ground that it "does not specify the works that are at issue in this case." Objections at 4. But this objection was not raised in defendants' motion to dismiss. *See* Report at 7 ("Defendants do not dispute that Plaintiff adequately alleged which original works are the subject of his claim[.]"). Defendants' Objections, because they raise this argument for the first time, are therefore untimely. *See Tavares*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2.

### B.     The Complaint's Allegations as to Lee's Ownership of a Valid Copyright

Ownership of a valid copyright is an essential element of a copyright infringement claim. *See Yurman Design*, 262 F.3d at 108–09. A certificate of registration from the U.S. Register of Copyrights within five years of first publication of a work "constitutes prima facie evidence of

the valid ownership of a copyright, although that presumption of ownership may be rebutted."
*Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999); *see also* 17 U.S.C. § 410(c) (A "certificate
of [copyright] registration made before or within five years after first publication of the work
shall constitute prima facie evidence of the validity of the copyright."); *Boisson v. Banian, Ltd.*,
273 F.3d 262, 267 (2d Cir. 2001) (certificate of registration constitutes prima facie evidence of
both the validity of the copyright and originality of the work.).

Defendants argue that Lee lacks standing to bring this claim because he has not
"prove[n]" he is the exclusive owner of a valid copyright.  Objections at 4.  Defendants dispute
the evidentiary weight of Lee's copyright registration, fault Lee for failing to prove his chain of
title, and dispute the validity of the assignment of the copyright from Lee's brother to Lee.  *Id.*
at 5–8.  Defendants further argue that Lee's copyright is invalid because the work in question is a
compilation, and that Lee is improperly asserting the rights of third parties (presumably the other
owners of copyrighted works within the compilation).  *Id.* at 8–12.[3]

Defendants arguments, however, suffer from a common defect:  They do not construe the
Complaint in the light most favorable to the plaintiff.  Instead, defendants ask the Court to draw
inferences in favor of the defendants.  *See Koch*, 699 F.3d at 145 (on motion to dismiss, courts
must "accept as true the facts alleged in the Complaint, drawing all reasonable inferences in
favor of the plaintiff").

---

[3] Defendants also contend that Lee lacks standing because only producers and distributors, and
not owners, can sue for infringement of "synch rights," namely the right to reproduce
copyrighted lyrics on a karaoke screen.  Objections at 12–13.  But defendants did not raise this
argument in their motion to dismiss briefs.  It is thus inappropriate for the Court to consider it
here.  *See Tavares*, 2011 WL 5877548, at *2 ("If the Court were to consider formally these
untimely contentions, it would unduly undermine the authority of the Magistrate Judge by
allowing litigants the option of waiting until a Report is issued to advance additional arguments."
(citation omitted)).

Drawing all reasonable inferences in Lee's favor, and reading the Complaint with the solicitude due a *pro se* plaintiff, the Complaint makes sufficient allegations and attaches supporting material to adequately plead that he is the owner of a valid copyright in the work at issue. Lee has alleged that he is the copyright holder of his father's musical works. Compl. ¶ 6. According to Lee, after his father died in 1960, the copyrights of the musical works created between 1937 and 1960 were transferred to his family. *Id.* ¶ 8. Lee's mother, Jung Sun Kim, first transferred the copyrights to Lee's brother, Beom Seung Lee, who then assigned the copyrights to Lee. *Id.* In support of this claim, Lee attaches a Certificate of Registration, No. TX5-432-807, from the U.S. Copyright Office. *See* Certificate. The Certificate indicates that Lee obtained a copyright, effective as of August 5, 2001, for the Collection, first published on October 10, 1996. *Id.* Because the Certificate was obtained within five years of the date of first publication, it constitutes *prima facie* evidence of the validity of Lee's ownership of a copyright for the Collection. *See Hamil Am. Inc.*, 193 F.3d at 98. Lee also attaches documents that support a valid chain of title: the August 1, 2001 contract through which Lee's brother assigned Lee the copyrights to their father's works, and a letter from the Korea Music Copyright Association confirming that Lee's brother inherited the copyright interest from their father. Compl., Ex. 3.

Viewed in the light most favorable to Lee, these pleadings and attached materials support that he received the copyrights before the effective date of the Certificate. They therefore adequately plead that Lee owns a valid copyright over the Collection. To be sure, defendants make various factual representations that, if substantiated, could support their claim of invalidity. These include that Lee allegedly misled the Copyright Office in applying for the copyright, and that the assignment to him was not properly effectuated. Objections at 4–8. But, as the Report

correctly concluded, *see* Report at 7–10, defendants merely raise factual issues that cannot be resolved on the pleadings, but instead await discovery*, see McCarthy v. Stollman*, No. 06 Civ. 2613 (DAB), 2009 WL 1159197, at *4 (S.D.N.Y. Apr. 29, 2009) (denying motion to dismiss because, "for purposes of the pending motion, this Court must accept as true the Plaintiffs' version of the facts regarding ownership of the copyrights at issue"). On the pleadings, Lee's claims are plausible, including that the post-registration assignment to him from his brother functioned as a settlement or "quitclaim" assignment that is not inconsistent with Lee's claim to have owned rights to the works at the time of registration. *See Beom Su Lee v. Flower Karaoke*, No. 18 Civ. 2580 (BMC) (PK), 2019 WL 1597309, at *3 (E.D.N.Y. Apr. 15, 2019) (denying motion to dismiss that argued that a transfer of title post-dating the registration of the copyright ostensibly meant that plaintiff did not own the rights to the work at the time of registration).

Similarly unavailing is defendants' argument centered on the collective nature of the copyrighted work. Defendants argue that the individual songs within the Collection were all published before the 1996 publication of the Collection as a whole. Evidently relying on Lee's representation that Jae Ho Lee composed musical works between 1937 and 1960, Compl. ¶ 6, defendants assert that "there is no reason that the works were not published at or around the time they were created in the 1950[s]," Objections at 8. This argument too does not merit dismissal. It is unclear whether defendants argue that Lee has improperly treated the Collection as (1) a "single work" under 37 C.F.R. § 202.3(b)(4) or (2) a "compilation" under 17 U.S.C. § 101, the latter of which requires an element of originality. Defendants' brief appears to conflate the two. Objections at 11–12. Regardless, neither critique supports dismissal on the pleadings, because each theory requires crediting factually that the individual works had been published before the

publication date for the Collection (1996) that the Complaint alleges.  The Complaint nowhere

alleges this.  It states only that the individual works had been *composed* before that date, Compl.

¶ 8; the Certificate that the Complaint explicitly attaches lists 1959 as the date of the Collection's

creation and 1996 as the date of its first publication.  *Id.*, Ex. 3.  Defendants wrongly seek to shift

to plaintiff the duty to "refute" defendants' contention "that [the works] were published"

previously.  Objections at 12.  In fact, Lee's Complaint and attached Certificate have adequately

alleged a publication date of 1996.  Defendants are at liberty to seek to show, after discovery, an

earlier publication date, but, at this early pleading stage, their claim to that effect cannot be

treated as accurate.

Defendants, finally, dispute Lee's standing to sue for copyright infringement on the

ground that it is possible that Lee co-owns, rather than solely owns, the relevant copyright.  *See*

Objections at 12; *see also* Def. Mem. at 12–13.  But, accepting as true the Complaint's well-pled

allegations, Lee has adequately pled his sole ownership.  Defendants' theorizing that other Lee

family members retain copyright interests cannot be credited at the pleading stage.[4]

The Court therefore holds, with the Report, that Lee has adequately pled that he is the

owner of a valid copyright for the Collection, and rejects defendants' objections to the contrary.

### C.    Infringing Conduct by Each Defendant

Defendants next argue that the Report incorrectly found that Lee's Complaint adequately

alleged infringing conduct by each defendant.  Objections at 13.  They contend that Lee failed to

plead "a specific account of infringement as to each and every defendant" and that his Complaint

lacks "detailed factual allegations as to the actions or inactions of each Defendant."  *Id.*

---

[4] In any event, in this Circuit, a joint copyright owner, pursuing an infringement claim, is not
invariably required to join co-owners.  *See Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007).

Defendants overstate what is required of Lee's pleadings.  A complaint need only "plead factual content that allows the court to draw the reasonable inference that the defendant is liable" for copyright infringement.  *Iqbal*, 556 U.S. at 678.  Lee has done so here.  His Complaint alleges that he visited defendants' karaoke establishments during a 13-day period in April 2018 to investigate whether the establishments were using machines that contained his father's works.  Compl. ¶ 10.  Lee observed that the establishments contain, and alleges that he used, the TJ Media Karaoke machine, which contains and makes available for playing 42 of his father's copyrighted songs.  *Id.* ¶ 11; *id.*, Ex. 5.  The Complaint also describes the karaoke bars and how they operate.  *Id.* ¶¶ 12–15.  Finally, the Complaint attached video recordings and photos of him playing the copyrighted songs at several of defendants' establishments.  *Id.*, Ex. 4.

These factual allegations, which must be taken as true, adequately plead infringing conduct by each defendant.  It is not fatal that Lee has not attached supporting media evidence capturing acts of infringement by each defendant.  Given Lee's well-pled allegation that each defendant's location contains the TJ Media Karaoke machine, and the supporting media evidence from several defendants' locations that these machines contain his father's copyrighted songs, it is plausible to infer that one or more of the copyrighted songs have been played at the other defendants' locations.  *See Flower Karaoke*, 2019 WL 1597309, at *3 (denying motion to dismiss and holding that "a plausible inference can be drawn that [Jae Ho Lee's] songs are so well known that even those defendants which plaintiff did not expressly visit may have infringed."); *see also id.* ("If the songs were in [defendants'] karaoke books, they weren't there to take up space.  They were there as an offer for customers to play the songs in defendants' karaoke rooms.").

The Court therefore finds, with the Report, that Lee's Complaint—by alleging that a karaoke machine containing his father's songs is present and in use at each establishment, by alleging the playing of such songs at various of these locations, and by attaching supporting video and photographic evidence of these facts—has adequately alleged infringement at each establishment.

**D.    Public Domain**

Defendants next argue that the Copyright Act of 1909 (the "1909 Act") applies to the songs contained in the Collection, and that these songs are therefore now in the public domain. Objections at 14.  The 1909 Act applies to all works published before 1978, whereas the Copyright Act of 1976 (the "1976 Act") applies to all works published in 1978 and thereafter. *See Stern v. Lavender*, 319 F. Supp. 3d 650, 667–68 (S.D.N.Y. 2018).  The basis for defendants' claim that the 1909 Act applies is their supposition that Lee's father's songs must have been published (and not merely created) between 1937 and 1960.  Defendants go so far as to claim that it is "undisputed" that some of the elder Lee's songs were published before the 1976 Act took effect.  Objections at 11.

This argument is easily disposed of at this stage because there is no basis on which the Court can find publication of the songs in question before 1978.  Lee, as reviewed above, has adequately alleged both that his father created the songs between 1937 and 1960 and, salient here and contrary to defendants' thesis, that the songs were first published in the Collection in 1996. Lee's Complaint, in fact, attaches a Certificate of Registration to that effect.  *See* Certificate. Taking these well-pled allegations as true, the works fall within the 1976 Act.  And under Section 303 of that Act, where a work was created before January 1, 1978, and published before December 31, 2002, the work's copyright protection extends at least to December 31, 2047.  *See* 17 U.S.C. § 303.  To be sure, defendants may ultimately demonstrate after discovery a pre-1978

13

publication of one or more works that places them in the public domain.  But defendants'
observation that Lee has not explained "the delay" between the date the works were created and
when they were published, Objections at 14, does not give rise to the inference that any work
was published before 1978.  The Court therefore, with the Report, rejects defendants' argument
that dismissal is warranted because the works are in the public domain.

### E.   Public Performance by Each Defendant

Defendants next argue that Lee's Complaint does not allege that defendants publicly
performed the copyrighted works.  Objections at 18.  Defendants assert that because the karaoke
clubs contain private viewing rooms, analogous to hotel rooms, it is possible that a performance
of these songs was private and therefore non-infringing.  *Id.* at 18–19 (citing *Columbia Pictures
Indus., Inc. v. Prof'l Real Est. Invs., Inc.*, 866 F.2d 278, 280–81 (9th Cir. 1989) (holding that
videodisc movie showings inside hotel rooms did not constitute a public performance)).  To this
end, defendants characterize the private singing rooms inside the karaoke clubs as "completely
closed to the public," and akin to hotel rooms in that the clubs provide food and drinks, "similar
to room service." *Id.*  Defendants further argue that the videos that Lee has attached to the
Complaint do not depict public performances because Lee initiated them himself.

> Under 17 U.S.C. § 110:
>
> "To perform or display a work 'publicly' means (1) to perform or display it *at a
> place open to the public* or at any place where a substantial number of persons
> outside of a normal circle of a family and its social acquaintances is gathered; or
> (2) to transmit or otherwise communicate a performance or display of the work to
> a place specified by clause (1) or to the public, by means of any device or process,
> whether the members of the public capable of receiving the performance or display
> receive it in the same place or in separate places and at the same time or at different
> times."

17 U.S.C. § 101 (emphasis added).  To meet this standard, Lee's Complaint alleges that the
karaoke establishments themselves are open to the public—a point defendants do not dispute.  It

further alleges that the singing rooms are located inside "place[s] open to the public" under the statute, and are available for use by anyone willing to pay to rent them. *See* Compl. ¶ 12. Defendants counter by arguing that the availability of food and drinks in the rooms, which defendants liken to room service, makes them akin to hotel rooms, which are private. Objections at 18.

Defendants have identified an issue on which Lee's claims potentially may turn: whether defendants' establishments are more like private movie-viewing rooms in a public establishment. *see Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 158–59 (3d Cir. 1984) (screening of movies in private viewing rooms in a larger public establishment held a public performance), or like movies presented in hotel guests' individual rooms, *see Prof'l Real Est. Invs.*, 866 F.2d at 280. But this question is one of fact, which cannot properly be resolved on a Rule 12(b)(6) motion. *See Flower Karaoke*, 2019 WL 1597309, at *3. Discovery will presumably reveal and allow the parties to examine with specificity the manner in which karaoke performances occur in defendants' establishments, permitting this issue to be resolved either on summary judgment or at trial.[5] At the pleadings stage, however, Lee has pled enough facts to make plausible that there have been public performances of the songs at issue.

Defendants finally argue that Lee's Complaint does not allege a public performance because Lee alone publicly performed the songs in question when he visited the establishments, and the attached videos do not identify the songs he performed. Objections at 19–20. As to the

---

[5] Although the parties' dispute largely turns on the character of the singing rooms, the Complaint also refers to the bar area of the karaoke establishments, suggesting that it, too, is an area open to the public in which karaoke is performed. *See* Compl. ¶ 13. Defendants appear to acknowledge that certain establishments have karaoke at the bar. *See* Objections at 13 n.10. The Court expects that discovery will test whether there have been public performances of the songs at issue in the bar areas of defendants' establishments.

latter point, as the Report notes, the songs in the videos can be identified by song number, which corresponds to the name of the song in the songbook. *See* Report at 12; Compl., Ex. 5. And at the pleadings stage, that Lee sang the songs performed in the videos does not make his claim implausible that others, using the songs books present in defendants' establishment, have also performed them. That the songs were available in the song books plausibly suggests that they were "there as an offer for customers to play the songs in defendants' karaoke rooms." *Flower Karaoke*, 2019 WL 1597309, at *3 (finding that plaintiff plausibly alleged public performance).

Accordingly, the Court, with the Report, finds that the Complaint adequately alleges public performances of the songs at issue.

### F.  Fair Use

The exclusive rights of a copyright owners are limited by the fair use doctrine. Fair use of a copyrighted work "for purposes such as criticism, comment, new reporting, teaching . . . , scholarship, or research[] is not an infringement of copyright." 17 U.S.C. § 107. Fair use permits "the public to draw upon copyrighted materials without the permission of the copyright holder in certain circumstances." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014). The Copyright Act sets out four non-exclusive factors to consider in determining whether a defendant's use of a copyrighted work is a fair use: (1) the purpose and character of the work; (2) the nature of the copyrighted work; (3) the amount or proportion used in relation to the protected work as a whole; and (4) the effect of the use upon the potential market for the work. 17 U.S.C. § 107. No factor is dispositive; instead the analysis is conducted on a case-by-case basis, and all factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994).

"The determination of fair use is a mixed question of fact and law," *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014), and one that is "'open-ended and

context-sensitive inquiry'" and "fact-driven," *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011) (quoting *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006)); *see also Campbell*, 510 U.S. at 577 ("[T]he [fair use] statute, like the doctrine it recognizes, calls for case-by-case analysis.").  Consequently, although fair use can be the basis of a motion to dismiss, the fact-driven nature of this affirmative defense has led to "a dearth of cases granting such a motion."  *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015).

Defendants here argue that their use of the copyrighted songs constitutes fair use because karaoke performances of the songs "can be used" as teaching aides for improving one's voice or as a means to parody the songs.  Objections at 20.  As a basis for dismissal of Lee's claims on the pleadings, however, this argument falls short.  While it is conceivable that the facts that will be developed in discovery would support a fair use defense, the face of Lee's Complaint and the cognizable materials attached to it do not establish fair use, as the Report rightly notes.  Report at 15.  And the cases on which defendants rely are easily distinguished.  In *Fox News Network, LLC v. TVEyes, Inc.*, 43 F. Supp. 3d 379 (S.D.N.Y. 2014), the court found fair use as to some practices based on a fully developed record at the summary judgment stage, while declining to enter summary judgment for defendants as to fair use with respect to other practices.  *Id.* at 397–98.  And in *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012), the court upheld dismissal of a complaint based on fair use because, viewing defendant's work alongside the copyrighted work, it was clear that defendant's work was parody and "within the core of copyright protection."  *Id.* at 693–94.  That is far from clear here.  Defendants here do no more than argue that karaoke renditions of songs "can be used" as instruments of parody.  Objections at 20.  The pleadings, however, leave indeterminate whether, in fact, performances of the songs

at issue were used in whole, in part, or not at all as parodies.  Accordingly, defendants are not entitled to dismissal on this ground, either.

### G.    Willful Infringement and Damages Enhancement

Defendants next object to the Report's failure to address their argument that Lee's Complaint did not adequately allege willful infringement.  *Id.* at 21.  Defendants note that the Complaint does not allege that defendants were on notice that the machines in their establishments contained potentially copyrighted works or that Lee had ever sent any defendant a cease-and-desist letter.  *Id.* at 22.

The Copyright Act provides for enhanced statutory damages in cases of willful infringement.  17 U.S.C. § 504(c)(2).  To prove willfulness, the plaintiff must either show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).

Because determining willfulness is highly fact-dependent, allegations of willfulness are rarely dismissed as deficient on the pleadings.  Defendants cite two cases doing so, but in each case, the pleadings revealed that the infringement began before the protected works had been registered, making statutory damages unavailable as a matter of law.  *See Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 735–36 (S.D.N.Y. 1996); *Boarding Sch. Rev., LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921 (DAB), 2013 WL 6670584, at *10 (S.D.N.Y. Mar. 29, 2013).  Defendants urge that "[p]laintiff must, at least, set forth facts as to 'whether the copyright law supported the plaintiffs' position so clearly that the defendants must be deemed as a matter of law to have exhibited a reckless disregard of the plaintiffs' property rights.'"  Objections at 22 (quoting *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1392

(6th Cir. 1996)).  But that standard is derived from a case resolved on summary judgment, whereas the issue here is the plausibility of a Complaint's allegation of willfulness.

That said, it is a close question whether Lee's Complaint adequately alleges willfulness, because its factual allegations on that specific point are sparse.  Nevertheless, construing the *pro se* Complaint to "raise the strongest arguments that [it] suggest[s]," *Triestman*, 470 F.3d at 474, the Court finds that Lee has adequately alleged, at a minimum, that defendants acted with a reckless disregard for Lee's alleged rights in the works.  The Complaint alleged that Lee's father is an "extremely popular" artist in Korea and that his works were widely known, *see* Compl. ¶ 6, and that defendants, without obtaining a license to do so or affirmatively ascertaining that the songs were unprotected by copyright, included the songs on their machines, *see Beom Su Lee v. Karaoke*, No. 18 Civ. 8633 (KM) (SCM), 2019 WL 2537932, at *10 n.10 (D.N.J. June 19, 2019) (holding that *pro se* plaintiff has sufficiently pled willful infringement where pleadings included allegations that the artist and works were widely known).  These allegations are enough at this initial stage.

### H.    Defendants' Motion for a More Definite Statement

Finally, defendants object to the Report's denial of their request for a more definite statement.  Objections at 22.  Under Rule 12(e), a court may order a more definite statement where a complaint is "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  However, "[m]otions for a more definite statement are generally disfavored because of their dilatory effect.  The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings."  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 233 F.R.D. 133, 135 (S.D.N.Y. 2005) (internal quotation marks omitted).  "Thus, a Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a)."  *Home &*

*Nature Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004).  The Court

sees no reason to depart from that general approach here.  The tools of discovery, rather than

compelling a more definite statement from Lee, are the proper avenue for defendants to flesh out

Lee's contentions.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report in full and denies defendants'

motion to dismiss or for a more definite statement.  The Court respectfully directs the Clerk of

Court to terminate the motion pending at Docket 32 and to mail a copy of this decision to

plaintiff.  This case remains under the able pretrial supervision of Magistrate Judge Aaron.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: August 31, 2020
       New York, New York

20